JOSÉ MARÍA SOLIS-MARTINÓ, Plaintiff and Appellant, *v.*
MANUEL CASTRO-ORIAZABALA, Defendant and Appellee.

No. 3978. Argued November 19, 1926.—Decided December 23, 1926.

*Antonio L. López* for the appellant. *Joaquín Vendrell* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This is an injunction proceeding to recover the material possession of a piece of real property in accordance with the procedure prescribed by Act No. 43 of March 13, 1913, as amended by Act No. 11 of November 14, 1917.

Plaintiff herein, who is the usufructuary of a certain lot in Caguas described in the complaint adjoining another lot of which the defendant had the usufruct, alleges that the defendant had dispossessed him of a described part of his by building a fence of wood and wire netting separating that piece of land from the remainder of the plaintiff's lot, thus depriving him of the use thereof.

Defendant denied this averment and alleged as a special defense that the plaintiff surveyed and set the boundaries of his lot after possession by the defendant of the lot occupied by him in usufruct and without notifying him of such survey or giving him an opportunity to be present.

The court below dismissed the complaint for the reasons set forth in its opinion which reads as follows:

"The parties herein are the owners of two properties situated in Caguas which are described in the complaint and in the answer.

"The properties adjoin each other, the back part of defendant's property adjoining the east side of plaintiff's which is on the left facing it.

"The evidence introduced at the trial showed the following facts:

"That plaintiff José M. Solís is the owner of a one-story frame building with an iron roof at No. 15 Campio Alonso St., Caguas, on a lot belonging to the municipality.

"That defendant Manuel Castro is also the owner of a two-story cement house at No. 62 Acosta St., Caguas, on a lot of the municipality.

"That the two properties adjoin each other, that of plaintiff on its left side facing it which is east and that of defendant on its back, and there is between them a piece of land with a three-meter frontage on Campio Alonso St., the back thereof adjoining a wing of defendant Castro's house. On the right side it abuts on the house of plaintiff Solís and on its left, at the back, on that of defendant Castro.

"Defendant has erected a wooden fence on this piece of land and plaintiff alleges that he is in possession thereof and files this injunction proceeding to recover the possession of which he has been deprived by the act of defendant.

"The evidence consisted of both oral and documentary evidence on both sides, as well as of a personal inspection by the judge.

"Therefore the point to be settled is reduced to a determination of the party to whom shall be awarded the possession of the piece of land adjoining both properties.

"According to the evidence produced by Solís the lot of which he has the usufruct has a frontage of 11.50 meters, and defendant Castro alleges that his lot has a depth of 17.50 meters.

"To establish the above facts both parties have produced cer- tificates issued by the municipality of Caguas tending to prove their contentions.

"But on a personal inspection and after measuring the land in possession of both litigants, starting from the fence built by defendant, since it is alleged that by said inclosure plaintiff had been deprived of the possession which he was enjoying, we find that plaintiff's lot measures 9.60 from the inclosure, and adding thereto half the width of the alley on the other side, that is to say, on the right facing it and measuring 0.40, would give his lot a frontage of 10 meters, and therefore his lot would be 1.50 meters short to conform with his title.

"As to defendant, his lot has a depth of 17.60 under his title, and according to our measurements, starting always from the inclosure it has a depth of 18.22 meters showing an excess of 0.62 meters.

96

"Resuming, it appears from the personal inspection that plaintiff's lot is 1.50 meters short, and that defendant has improperly occupied with the inclosure 0.60 meter, and plaintiff's documents do not show that he is entitled to the possession of the whole of the piece of land lying between the two properties, as alleged.

"As to their titles, we must say that we place more credence on that of defendant, which is a certified copy of the original concession of the lot to Fabiana Díaz, his predecessor in interest, while that of plaintiff is a certificate of certain documents in the municipality ordering the laying out of the lot's boundaries; but we have not been shown the original concession, and nothing has been alleged or shown as to the cause of this omission, nor why the laying out was ordered, nor has the title thereto been shown.

"As to the fact of the possession itself, it seems to us doubtful whether plaintiff has been the only possessor, and we dare say that the land in question has been constantly used by the tenants of both parties, especially by those of defendant Castro, because the room at the far end of the wing of his building, which is at the back part of the land under litigation, is reached mainly through the disputed ground.

"From the foregoing, we are of the opinion that plaintiff having failed to show that he has the exclusive right to the piece of land lying between the properties, the petition must be dismissed with costs against plaintiff as prescribed by law, but without attorney's fees, because defendant has exceeded his right in erecting the fence on the border of the lot in accordance with his title."

The opinion of the trial court and a consideration of the evidence introduced by the parties at the trial lead to the conclusion that the procedure followed has not been in conformity with the special nature of the injunction proceeding to retain and recover the material possession of real property. The controversy was not confined to the mere fact of possession, but went farther by determining and adjudging the right to the possession of the piece of land in controversy as if it were an ordinary action.

Section 448 of the Revised Civil Code is a literal reproduction of section 446 of the Spanish Civil Code and is a statute which, apart from the principle established therein that every possessor shall be respected in his possession,

mentions at the same time the civil procedure to be followed for its enforcement. Said section 448 reads as follows:

"Every possessor has a right to be respected in his possession, and if he be disturbed therein, he shall be protected or reinstated in such possession by the means established in the laws of procedure."

Though it might be said that the statement made as to the procedure to be followed is for mere information because the Civil Code is a substantive law, nevertheless it is important to know that the Spanish legislators, by the wording of section 446, doubtless referred to injunctions to retain and recover material possession, the summary proceeding for the same being governed by section 1651 and following of the old Law of Civil Procedure.

On this point the Supreme Court, in the case of *Mattei v. Badillo,* 21 P.R.R. 165, interpreting the intention of the Legislature of Porto Rico, said:

"Before the promulgation of the present Code of Civil Procedure the old law of procedure provided the interdict for the recovery of possession in cases like the present, and as the procedure was understood to have been repealed by the new Code of Civil Procedure. the Legislature sought to reestablish the same, to a certain extent, by Act No. 43, to which we have referred."

In commenting on article 4460 of the old Civil Code, in connection with injunctions to retain and recover possession, Manresa defines their nature as follows:

"Injunction, following the definition given to it by writers on procedure, is a summary proceeding the purpose of which is to determine temporarily on the fact of possession without prejudice to the rights of the parties, or to suspend or prevent a prejudicial act. This name is also given to remedies granted to a possessor to attain the same end.

"By its very nature, decisions on injunctions are not final and do not prejudice third parties with equal or better rights. They are no bar to broader actions where questions of right can be pleaded, considered, argued and decided. It could not be otherwise, since, as regards the matter which concerns us, possession may have in its favor a presumption of the right to possess, but such

presumption yields necessarily to contrary proof, and that proof, referring to the right and not the fact, can not be admitted in an injunction.'' 4 Manresa, Civ. Code, pages 209, 210.

The theory of the complaint is that the defendant had dispossessed plaintiff a month before the filing thereof of the material possession of a piece of land 3 meters wide and 8.30 meters deep by erecting a fence separating the inclosed land from the remainder of the lot and thus preventing the plaintiff from using it. Though the defendant denied having erected such an inclosure, the court below admitted the fact and consequently it appears from the evidence that the defendant committed the act. This did not receive, however, all of the importance that it deserved within the summary proceeding of injunction to recover the material possession of real property. Possession was not only considered as a question of fact, which was the real issue, but the proceeding was enlarged so as to include the question of the right of the parties to the possession.

The documentary evidence of defendant, as well as the survey of the lots made at the time of the ocular inspection in accordance with the titles, tended rather to decide the question of whether the inclosed portion of land belonged to either of the lots in accordance with the titles.

The controversy in this summary proceeding is so restricted to the concrete fact of possesion that an injunction to retain or to recover possession may at times be brought against the real owner. In this respect Manresa says:

"Apart from the provisions of the Law of Civil Procedure, injunctions may be brought by every posse'ssor, and a possessor is defined by section 430 as the person holding or legally enjoying the thing with or without the intention of keeping it as his own.

"There is no doubt, therefore, that the legal as well as the natural possessor, the one possessing as owner as well as the one who does not possess as owner, may enjoin. Those possessing in behalf of another enjoy the same privilege, although not in their own right; but as agents of the real owner in whose name they possess.'' 4 Manresa, Civ. Code, pages 210, 211.

Injunctions, according to Larent, are granted on a presumption of ownership. This is a matter of public policy. The law can not allow the translation of disturbance and violence into facts, even when carried out by those claiming a title to the thing, because if they are entitled thereto they can have recourse to the law.   8 Scaevola, Civ. Code, p. 365.

There are several decisions of this Supreme Court holding similar principles restricting the scope of injunctions to the determination of the mere fact of possession.

"In an action for an injunction to recover possession, as in an action of unlawful detainer, no conflict of titles can be considered, for only the immediate right of possession is involved." *Ortiz* v. *Silva et al.*, 28 P.R.R. 357.

"The fact that the owner of a rural property does not object to the survey of a property which adjoins his own does not deprive him of his right to an injunction as provided for in the Act of March 13, 1913, for the purposes of recovering any portion of land of which he may have been dispossessed without his consent as a result of the survey, for the survey does not give or take away any rights and leaves intact the questions of possession and ownership, its sole object being to define and fix the boundaries of the properties, to avoid the confusion or disappearance of the former landmarks and to prevent actions which might arise from such confusion." *La O* v. *Rodríguez*, 28 P.R.R. 593.

In the case of *Somonte* v. *Mimoso*, 27 P.R.R. 371, it was held:

"The question of what constitutes the true boundary line cannot properly be regarded as involved and should not have been dragged into the case or considered by the court. The circumstances mentioned with regard to the surveys and the result thereof are equally irrelevant. Neither the lease of the adjoining property to respondent, nor the calls of the title papers and surveyor's notes in his possession, nor the survey made by him create any right to seize by force and violence any part of such property in the actual possession of petitioner. The law of 1913 is plainly and primarily designed to prevent indulgence in such methods and to compel a resort instead to the courts."

The court below, on the other hand, on a motion for recon-

sideration of the judgment, reaches the conclusion "that the disturbance in this case by defendant as alleged by plaintiff is a disturbance of a right, because defendant Castro claimed that he had the right to carry out the act done by him and therefore that under the circumstances the injunction was improper, because said remedy is proper only when the disturbance is merely of fact, arbitrary in itself and without any right on the part of the disturber to commit the same."

The trial judge bases his opinion on the commentary by Manresa on section 446 of the old Civil Code when he says that the general principle that an injunction may be brought against any person who commits acts of disturbance or dispossession, even though it be the owner himself, admits of an important exception and that is when the person who dispossesses acts by virtue of a right belonging to him.

Apart from the fact that none of the cases mentioned by Manresa apply to the facts of this case, it appears that the exception is based on the fact that though it is difficult, if not impossible, to show *a priori* in an injunction proceeding the bad faith of a possessor, however, the tenant at sufferance and the fraudulent or violent holder can not be considered as true possessors. "In a legal sense we are of the opinion that they can not avail themselves of injunctions to retain or to recover against the possessor who tolerates, or the person whom they have dispossessed." 4 Manresa, pages 212, 213. In conformity with these principles this author cites the jurisprudence of the Supreme Court of Spain in a judgment of October 14, 1890, to the effect that the effects of a restitutory act in favor of persons not having the civil or material possession can not prevail in an ordinary action. Likewise, Scaevola, dealing with this subject and referring to said jurisprudence, clearly establishes the summary nature of the injunction proceeding and the real scope of the jurisprudence referred to, expressing himself as follows:

"It is unquestionable that the possessor in good faith must be protected in his possession; but shall the holder in bad faith be likewise protected? It is evident that if the existence of bad faith could be shown, the possession affected by that vice could not be protected; but good faith or bad faith is a matter of personal concern affecting the conscience rather than the law and therefore it is difficult, if not impossible to determine it *a priori*. That is why we said in our comment on section 434 that, as good faith or bad faith must appear from the controversy, so long as the matter is not legally discussed and a condition of fact defined for the application of the proper law, possession must be considered in good faith and must be protected by the defensive means provided by law. Besides, good faith is always presumed in law unless it be otherwise shown.

"It is true that there are cases (as mentioned in the comment on sections 433 and 434) where bad faith can be presumed; but this is not applicable in cases of injunction, at least in our positive law, because in injunctions the only point to be settled is possession or tenancy of the thing, without determining the title under which the same is had. Section 1652 of the Law of Civil Procedure requires information only on the fact of possession or tenancy, and as to being disturbed or fearing to be disturbed in said possession. When these particulars are shown, the law grants its protection without going into an examination of the possessory title for which it reserves the ample remedy of an ordinary action.

"Two judgments of the Supreme Court seem to contradict our statement and consequently it is proper to examine them.

"One of them is that of June 10, 1885, according to which a tenant at will or at sufferance is not entitled to bring an injunction to dispossess in his own name, as he has no right in the premises. This refers to a case in which a person was in the enjoyment of part of a property at the mere sufferance of the owner. The other is that of October 15, 1890, to the effect that rightful possession and tenancy are not acquired by the use of force, theft or precarium, because in order to be protected in its enjoyment the tenant must have acquired the same by title and in good faith and for a term with specification of a year and a day in conformity with Act 3, title VIII, book XI, *Novísima Recopilación*, and when the above conditions are not met, the owner may recover possession, under Act 10 of title XXX, *Partida* 3.

"This judgment refers to the following fact: The servant of the owner of a piece of property was tilling it in his capacity as servant.

Alleging to be in possession of the property, he brought an injunction against the owner. The injunction was granted and an ordinary action was brought in which the Supreme Court rendered the judgment from which we have quoted.

"We agree to the doctrine set up in the above judgments, which we think is very much in harmony with strict legal principles. But we are of the opinion that they neither abridge nor destroy the means of possessory protection, namely, injunctions. We agree with the doctrine that the possessor in bad faith is not a possessor and must not and cannot acquire possession; but what we do say is that possessory protection, embodied in injunctions, does not admit of going into the good or bad faith of the possessor, because then ordinary actions would be superfluous. This is shown by the two judgments quoted. It was not in this summary proceeding where the bad faith of the possessors or rather the tenants enjoined was shown, but in the subsequent ordinary action brought under section 1658 of the Law of Civil Procedure.

"In an injunction proceeding it is the question of fact and not of law which can be argued; and this is the gist of the decisions of the Supreme Court referred to. If it were allowed to argue in respect to the title to the possession, in regard to the right of the possessor to the property, the nature of the remedy of injunction would be changed and either the injunction or the ordinary action would be unnecessary in order to amply argue possession and ownership, and they should be condensed into one remedy," 8 Scaevola, *Cod. Civ.* pages 373, 375.

Scaevola also connects section 446 with section 1560 which is the equivalent of section 1463 of our Revised Civil Code, and he says on page 377 of the same volume:

"There cannot exist disturbance when inversely a private person or the government acts by virtue of a right pertaining to them. This concept which is set forth in section 1560 of the code in reference to leases is exact and it should be made extensive to every case under the same circumstances.

"For instance, if the owner ejects the lessor in the exercise of his right it is evident that he does not commit an act of disturbance."

The court below cites besides as applicable the jurisprudence laid down in the cases of *Martínez* v. *Soto,* 32 P.

R.R. 559, and *Municipality of Comerío* v. *Rivera*, 34 P.R.R. 593. These cases, however, are not at all applicable to the case before us, because they were brought and decided under the Act to Define Injunctions, Etc., of March 8, 1906. In the *Martínez Case, supra,* if the petitioner's right had been clear, his petition would have been sustained. But in injunctions to retain and to recover possession the point to be settled is a question of fact and not of law and its scope is well limited.

We must consider the last finding of the trial judge as to the fact of the possession in itself, when he says that it is very doubtful whether the plaintiff has been alone in the possession of the piece of property in question stating that it has been constantly used by the tenants of both litigants.

The court, however, declared likewise as shown that defendant inclosed the piece of land in dispute, a fact that defendant stoutly denied in his answer and evasively admitted in his testimony; and the defendant has illegally inclosed a surface of 0.62 meters, as shown by the decision of the court when exonerating the plaintiff from the payment of attorney's fees. But even admitting that the tenants of both litigants used the land inclosed by the defendant, it was a further argument for the court to sustain the condition of the existing fact, because, on the other hand, the plaintiff declared that if the defendant's tenants did so it was merely at his sufferance.

From the foregoing the judgment appealed from must be reversed and another rendered granting the petition without special allowance of costs.